UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                            ) | DOCKET NO. 4:05-CR-40034 |
| ) | |
| NICHOLAS POLICE                ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM ON SENTENCING**[1]

Nicholas Police ("the Defendant"), through Counsel, submits the following Supplemental Memorandum on Sentencing for this Honorable Court's consideration at disposition.

**Introduction.**

The Defendant had pleaded guilty to the above numbered Indictment on February 10, 2006. As is the Procedure in this District Court, the conviction was followed by an investigation by this Court's Department of probation. An initial Presentence Report was published by the Probation Department, after which the Government and the Defendant had opportunity to lodge objections. The Revised -- and presumptively final -- Presentence Report was then issued in anticipation of sentencing. Some while after the Revised Presentence Report, the Probation Department filed yet another document -- an addendum to the Revised Report which added ten levels to the Defendant's total offense score. It would be gross understatement to say that this new document came as a surprise to the parties, the Government and the Defendant.

The Defendant is compelled, in the instant document, to object furiously to the inclusion

---

[1] In response to the Probation Department's third effort – the 'Re-revised Presentence Report.

of the new material, and to move to strike it, along with the increased offense level calculus, in its entirety.

**Facts.**[1]

On February 10, 2006, the Defendant pleaded guilty to three counts of an Indictment charging him with possession with intent to distribute, and distribution of, Marijuana (one count) and possession with intent to distribute, and distribution of, cocaine (two counts).[2] The offense conduct which led to the Indictment was straightforward enough. Investigating Agents, through the use of an informer, negotiated three controlled purchases of scheduled substances from the Defendant, all in the month of March, 2004, and all at the Defendant's residence, 45 Sagamore Road in Worcester, Massachusetts.

The Defendant is currently serving a three-to-five year Massachusetts prison term as the result of a conviction for cocaine trafficking.[3] The sentence was imposed May 21, 2004, and his projected release date will be May 10, 2009.[4] Under Chapter 4 of the Guidelines, the Defendant's Criminal History Category was fixed at II.

With a total offense level of 19,[5] *and according to the revised -- final -- Presentence Report,* the Defendant's presumptive Guidelines sentencing range was 33 to 41 months.

At the time of the Revised Presentence Report, after the parties' objections to its

---

[1] The Defendant incorporates by reference, as if herein set forth in full, his original sentencing Memorandum, along with the objections he made to the Probations Department's original assessment and offense calculus.

[2] All in violation of 21 U.S.C. §841(a)(1).

[3] The weight of the drug was in the statutory area of between fourteen and twenty-eight grams. There were two other counts to the State Indictment. On a charge of possession with intent to distribute a Class D drug, the Defendant was ordered to serve a two year house of correction-type sentence, concurrent with the five year prison term. On a conspiracy count, the Defendant was ordered to serve a probationary term of 4 years, including conditions of drug and alcohol evaluation and treatment. Upon the understanding of Counsel, the probationary period was to begin after the house of correction sentence expired.

[4] Arguably, between the State Police and the District Attorney's Office, the intent was to 'wrap up' the Defendant's outstanding State criminal conduct.

[5] The Probation Department factored in a three point downward adjustment for "acceptance of responsibility."

predecessor, the Probation Officer was possessed of all the material relevant to the disposition of this case. On the basis of the Revised Report, the Government and the Defendant were prepared to argue their positions at sentencing.

On June 26, the Probation Department issued a "Re-revised" Presentence Report, which included reference to certain 'discovery.' This 'discovery' consisted of information contained in a generic DEA 6 Report dated November 1, 2003.[6] The DEA 6 represented the debriefing of an unnamed informer, and entailed *data* concerning a number of persons for the most part unconnected with each other. The Defendant was not alleged to have been part of any conspiracy or joint venture involving such persons. To the extent that the conduct of the Defendant *was* alleged – in ¶¶5-8 of the DEA 6 – it bore no relation to the behavior underlying the present plea.

Taking into account this 'new' discovery,[7] the Probation Department recalculated the Defendant's offense level from 19 to *29* – a change from a Guidelines range of 33-41 months to a range of 97-121 months. Hence, under the latest calculus, the Defendant's prison exposure soars from a minimum of two years and nine months to a maximum of ten years.

The reasons for this alteration may be seen in ¶¶ 7 and eight of the DEA 6. There, through at least double hearsay, intelligence comes from an unknown informer that the Defendant was responsible for selling five to six kilograms a month. The truth of such an allegation is under severe doubt. Further, its use as a plea factor was anticipated by neither the Government nor the Defendant, and was certainly not agreed to as part of the plea. Upon information and belief, the Government was also completely blind-sided by the use of this *data*.

The Defendant has acted in good faith in accepting responsibility for his conduct. But his good faith extended beyond the act of a timely guilty plea. He voluntarily surrendered valuable

---

[6] See Exhibit "A," attached hereto.

[7] Upon information and belief, the subject DEA 6 was available to the Probation Department *prior* to the time of the Revised Presentence Report.

property to the Government. See ¶ 64 of the Re-revised Presentence Report.[8]

The Defendant asserts that the interjection of such eleventh hour information is grossly irresponsible, unfair to the Defendant, and not in conformity with the law. It amounts to sentencing by ambush.

**Argument.**

Even under a Guidelines reckoning, which is no longer required of a sentencing Court,[9] relevant conduct must be *proved*, by a preponderance of the evidence. Only after the *Government -- not* the Probation Derpartment –

> has met its burden of establishing, by a preponderance of the evidence, 'a *sufficient nexus* between the [extraneous] conduct and the offense of conviction,' may the sentencing court, in its sound discretion, make a 'relevant conduct' adjustment.

United States v. Williams, 10. F.3d 910, 913 (1st Cir. 1993), quoting from United States v. Sklar, 920 F.2d 107. 110 (1st Cir. 1990), emphasis and parenthetical in original. Proof by a 'preponderance of the evidence'

> ...means to prove that something is more likely than not so. In other words, a preponderance of the evidence means such evidence, as, when considered and compared with that opposed to it, has more convincing force, and produces the belief that what is sought to be proved is more likely true than not true... . The burden of proof has *not* been carried if, after considering all of the evidence, it is necessary to speculate, guess, or imagine that one or more of the necessary facts is true

---

[8] Such property – including cash – amounted to a voluntary forfeiture of approximately $64,000.

[9] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

4

United States v. Patriarca, 912 F.Supp. 596, 609-610 (D. Mass. 1995), emphasis added, ellipsis in original. The Patriarca Court went on to say that 'preponderance' does not mean simply that one side of a proposition has "the greater quantum." Rather, it means "...convincing [the mind of the Court] of the *truth* of the proposition asserted." *Id.*, quoting In re Winship, 397 U.S. 358, 367-368, 90 S.Ct. 1068 (1970), emphasis and parenthetical supplied.

In the present case, the 'new' Probation information does not provide any particular *nexus* to the Defendant's convicted conduct. As for its integrity, its rectitude, it fails. It is hearsay information, at least two levels deep. It comes from unsworn sources not subject to cross-examination. And it comes bearing no other *indicia* of truth or reliability which would inform it with weight sufficient to permit a Court to draw any reasonable inferences from it, let alone to arrive at a conviction of its *truth*.

The Defendant asserts, therefore, that the information – which was not in any event offered by the Government -- fails mortally in such regard.

Then, of course, there is the matter of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004).[10] The Defendant asserts that, whatever the circumstances of proof of relevant conduct may be, Blakely is an insuperable obstacle to the admission of the Probation Department's 'new' information. It is generally understood that the Blakely decision, with the exception of prior convictions, proscribes the use of any sentence-enhancing fact unless the fact has been proved to a Jury, and beyond a reasonable doubt. In the setting of a guilty plea, of course, a defendant may waive his or her Blakely securities.[11] But proper procedural safeguards must precede such a waiver, or it is not constitutionally valid. For example,

> When a defendant pleads guilty, the State is free to seek judicial sentence enhancements *so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding.* See *Apprendi*, 530 U.S., at 488, 120 S.Ct. 2348; *Duncan v. Louisiana*,

---

[10] Rehearing denied August 23, 2004.

[11] This is possible under certain trial circumstances, as well.

5

> 391 U.S. 145, 158, 88 S.Ct. 1444 (1968). *If appropriate waivers are procured,* States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

*Id.*, at 542 U.S. 310, emphasis added.

See also United States v. Roper, 338 F.Supp.2d 165 (D. Mass. 2004). In Roper, as part of his guilty pleas, the defendant committed a valid Blakely waiver to a single, discrete issue. As to all other sentencing enhancement issues, however, the Blakely protections remained in place, and were not subject to judicial factfinding using the standard of 'preponderance of the evidence."

In the present case, it is abundantly clear that the Defendant executed no such Blakely waiver – nor was such demanded or even anticipated by the Government. His freedom to claim his protections under Blakely therefore remain wholly intact. Hence he challenges the admission of the 'new' information and asserts that it cannot be used to enhance his sentence.

**Conclusion.**

Therefore he moves this Court:

1. To strike from the Re-revised Presentence Report -- in its entirety – all 'newly discovered evidence;'

2. To strike from the Re-revised Presentence Report the offense level calculus of 29, and order the offense level calculus restored to 19;[12]

3. To exclude from admission or reference at sentencing, or in sentencing conferences, all the stricken material;

4. To conduct Sentencing based upon the Revised Presentence Report, the Defendant's Memorandum on Sentencing, and such remarks as the Government may wish to make;

5. If there is any question concerning the 'newly discovered evidence,' to defer

---

[12] Both such figures exclude the three point acceptance of responsibility departure.

sentencing and permit discovery of the Probation and DEA materials including, if necessary, discovery of, and access to, any informer intrinsic to the new information, especially where he or she may have been a percipient witness to -- or a participant in -- a crime, whether charged or uncharged; and

    6. To permit any other discovery or other pleadings prior to sentencing and necessarily inherent to the present circumstances of this case.

                                      Respectfully Submitted,

                                      NICHOLAS POLICE, Defendant,
                                      By his Counsel:

                                      */s/ Thomas F. McEvilly*
                                      THOMAS F. McEVILLY
                                      McEvilly & Curley
                                      48 West Street, Suite 1
                                      Leominster, Massachusetts  01453-5694
                                      (978) 534-3556 [Telephone]
                                      (978) 534-5119 [Facsimile]

DATED: July 5, 2006

## CERTIFICATE OF SERVICE

I, Thomas F. McEvilly, Counsel to the Defendant Nicholas Police in the Foregoing-captioned pleading, certify that I have served copies of the within **Defendant's Supplemental Memorandum of Sentencing** upon the Probation Department of this Court and upon the Office of the United States Attorney, by in-hand delivery, this 5th day of July, 2006:

_____
THOMAS F. McEVILLY

# REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | 2. Cross File | Related Files "A" | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: S/A Damian P. Farley  At: Boston, MA | | | 6. File Title SAARI, John | |
| 7. ☐ Closed ☐ Requested Action Completed  ☐ Action Requested By: | | | 8. Date Prepared 11-01-2003 | |
| 9. Other Officers: SA Joseph Barrett, Framingham Police Detective Sgt Kevin Slattery, Rick Thompson, G/S Harry Brady | | | | |
| 10. Report Re: Initial debriefing of CS-█████ | | | | |

## DRUG RELATED INFORMATION

1. On October 29 and 30, 2003, CS-████████ (CS) gave the following information on individuals selling drugs in the Massachusetts area.

2. John **McHugh** sells cocaine, ecstasy and hydroponic marijuana in the Boston and Worcester area. **McHugh** is originally from Worcester but is currently residing on Kelton Street, in the Brighton area of Boston. In August of 2003, Nick **Police** introduced CS to **McHugh** for the purpose of buying hydroponic marijuana. **Police** was buying cocaine from **McHugh**. **McHugh** sells kilogram quantities of cocaine. CS began purchasing approximately 10 pounds of hydroponic marijuana twice a week from **McHugh**. CS bought the marijuana for $2850 per pound. While at the residence CS observed 50 pounds of marijuana contained in freezer bags and saran wrap. CS would travel to **McHugh**'s residence or **McHugh** would deliver to Worcester.

3. CS learned **McHugh** will be traveling to Buffalo, New York to meet with the members of the Hells Angles Motorcycle club to negotiate the purchase of marijuana. **McHugh** will be looking to buy approximately 100 pounds per week. **McHugh** is not allowed to enter Canada.

4. Approximately 1 year ago **McHugh** was selling ecstasy. **McHugh** was receiving and selling approximately 4000 pills per week from individuals that were arrested by DEA operating a large laboratory. (In November of

| 11. Distribution:  Division NEFD  District Worcester  Other SA Barrett | 12. Signature (Agent) | 13. Date 11-24-2003 |
|---|---|---|
| | 14. Approved (Name and Title)  G/S Harry Brady | 15. Date 11-24-2003 |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

VIG0000000122

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| (Continuation) | 3. File Title<br>SAARI, John | |
| 4.<br>Page 2 of 4 | | |
| 5. Program Code | 6. Date Prepared<br>11-01-2003 | |

2002, DEA Boston arrested 4 defendants selling ecstasy and operating a large lab in Worcester and Connecticut). CS said **McHugh** was kidnapped by these people because he owed money to his ecstasy suppliers.

5. **Police** told CS that he worked with **McHugh** for the past 2 years selling cocaine. **McHugh** continues to sell cocaine and marijuana.

6. **Police** sells cocaine in Worcester. In September of 2002, the Massachusetts State Police arrested **Police** attempting to purchase 40 pounds of hydroponic marijuana from an undercover State Trooper. **Police** was trading $60,000 cash and 4 ounces of cocaine. **Police** has plead guilty and is currently awaiting sentencing.

7. **Police**'s cocaine source of supply is a Dominican male who travels to New York City picks up the cocaine and returns to Worcester. CS believes the Dominican travels by way of a van service. **Police** keeps the cocaine at Sagamore Street in Worcester at a second floor apartment. **Police** sells approximately 5 to 6 kilograms per month. **Police** has offered CS his cocaine business when he goes to prison for the September 2002 arrest. The CS would pay Police cash while he was in prison. **Police** showed the CS how to cut and press cocaine if he took over the business.

8. **Police** sold Anthony **Massad** a kilogram and a half last week. **Massad** lives in Worcester. **Massad** was previously buying cocaine from **McHugh**. CS purchased cocaine from **Massad** prior to buying from **Police**. **Massad** owns a tanning salon on Grafton Street in Worcester. **Massad** sells ½ to ¾ of a kilogram of cocaine to Mark **Orsi** per week.

9. James and Richard **Doueihi** sell ecstasy in Worcester. Richard **Doueihi** was arrested in New York City with ecstasy and was sent to prison. CS was purchasing ecstasy from James **Doueihi** 100 to 200 pills at a time. CS said **Doueihi** has access to large amounts of ecstasy. CS said **Doueihi** is Lebanese.

10. On a few occasions, **Doueihi** has obtained hydro marijuana for CS in Lowell, MA. CS traveled with **Doueihi** to get the marijuana. **Doueihi** also has access to oxycontins 80 mgs.

---

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

VIG0000000123

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title SAARI, John | |
| 4. Page 4 of 4 | | |
| 5. Program Code | 6. Date Prepared 11-01-2003 | |

Nicholas **Police** - Naddis # negative, DOB 5-30-1978
James **Carey** - Naddis # 5467282
Mark **Orsi** - Naddis # pending - previously indexed in CC-01-0154

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

VIG0000000125

| | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | ████████ | ████ |
| | 3. File Title<br>SAARI, John | |
| 4.<br>Page 3 of 4 | | |
| 5. Program Code | 6. Date Prepared<br>11-01-2003 | |

11. Tom **Vigliatura** owns T Vigs Sports Supplements, a sports nutrition store on 98 West Boylston Street in Worcester. **Vigliatura** supplied GHB to CS. CS purchased at least 70 to 80 bottles from **Vigliatura**. CS paid $100 to $120 per bottle. CS would pick it up at **Vigliatura**'s store or CS would take **Vigliatura**'s Cadillac and transport the bottles to CS's residence. **Vigliatura**'s source of GHB is Matt LNU (possibly Laughlin) a body builder from Maine. Matt also sells oxycontins. **Vigliatura** gave CS one gallon of pure GHB on one occasion to cut and sell. **Vigliatura** sells steroids and designer steroids. CS has purchased oxycontins from Matt. CS purchased 80 mg tablets for $40-42 dollars per pill.

Non-Drug related information

James **Carey** does home invasions in Worcester, MA. Most of the robberies are drug dealers. CS has observed **Carey** with a handgun. **Carey** and **McHugh** are cousins. CS sold **Carey** 4 bottles of GHB.

Nick **Police** has 3 handguns; Anthony **Massad** has 2 semi-auto handguns.

Financial Information

Negative

Terrorist/Extremist Information

Negative

INDEXING

John **Saari** - Naddis # 5665961
Anthony **Massad** - Naddis # negative
Tom **Vigliatura**- Naddis # negative, w/m, DOB 9-28-68, ssn 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, resides 118 Santoro Road, Worcester, MA
Richard **Doueihi** - Naddis # 5295330
James **Doueihi** - Naddis # negative, DOB 5-31-1977, ssn, 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 resides 208 Pilgrim avenue, Worcester, MA
John **McHugh** - Naddis # pending - previously indexed in CC-01-0154

---

DEA Form  - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

VIG0000000124