UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
    )
v.    )    DOCKET NO. 4:05-CR-40034
    )
NICHOLAS POLICE    )


**DEFENDANT'S MEMORANDUM ON RELEVANT CONDUCT**

Nicholas Police ("the Defendant"), through Counsel, submits the following pre-Sentence Memorandum on the issue of 'relevant conduct' for this Court's consideration at time of disposition of this matter.

**Introduction.**

The Defendant had pleaded guilty to the above numbered Indictment on February 10, 2006. As is the Procedure in this District Court, the conviction was followed by an investigation by this Court's Department of probation. An initial Presentence Report was published by the Probation Department, after which the Government and the Defendant had opportunity to lodge objections. The Revised -- and presumptively final -- Presentence Report was then issued in anticipation of sentencing. After the Revised Presentence Report, the Probation Department filed yet another document – a Re-Revised Presentence Report which took into account a DEA 6

memorandum and other information. The new information caused the Probation Department to recalculate the Defendant's offense level, raising it from 19 to 29.[1] The Defendant has objected to the inclusion of the new material, and has objected to its use at sentencing.

**Facts.**

Most of the facts in this matter are known to the Court, and to the parties. The *data* which have given the Defendant cause for concern and for his objections are as follows.

Paragraph (11a) of the Probation Department's June 26, 2006 Re-revised Presentence Report contains an allegation that one Daniel Lehan[2] purchased 250 grams of cocaine from the Defendant each week for a period of five months.

Paragraph (11b) of the Report references a statement by an informer that he or she purchased cocaine from the Defendant, and that the Defendant customarily bought kilograms of cocaine for $28,000 each, redistributing the substance in ounce quantities at $925 an ounce.

Paragraph (11c) of the Report contains an allegation by an informer that the Defendant, some time during 2003, was selling five to six kilograms of cocaine a month. Further, the informer asserted that the Defendant showed him or her how to process cocaine, in the event that he or she were to take over the business. Finally, Paragraph (11c) notes that the Defendant sold 1.5 kilograms of cocaine to an unidentified person in late October, 2003. This information came from a November 1, 2003 DEA 6 Memorandum, a copy of which is in the Defendant's possession.

Paragraph (11d) of the Report reflects the statement of an unidentified witness, to whom

---

[1] Both such calculations took into account 3 points for Acceptance of Responsibility.
[2] In March of 2004, Lehan was arrested by the Massachusetts State Police over the possession of approximately nine ounces of cocaine, which Lehan claimed he purchased from the Defendant [April 21, 2006 Presentence Report, Paragraph (10)]. This sale was taken into account as relevant conduct, and factored into the Defendant's original

the Defendant claimed to have sold 135 kilograms of cocaine since the time he was arrested by the Massachusetts State Police, at a rate of 5 to 6 kilograms each week.

Taking into account the reviewed discovery, the Probation Department recalculated the Defendant's offense level from 19 to *29* – a change from a Guidelines range of 33-41 months to a range of 97-121 months.

It is the Defendant's position that, taken as it stands, the relevant conduct allegations do not prove such conduct by a preponderance of the evidence.

### Argument.

The Defendant asserts that the representations of the informers, and that of Mr. Lehan, are simply without credibility, the product of self-interest and without particular regard – if any – for truth. The representations are without substantiation or corroboration, unaffiliated with any articulable facts which would lend them credibility. The Defendant urges this Court to find that the allegations are insufficient to prove any 'relevant conduct' on his part under the preponderance of the evidence standard.[3]

The reliability of the informers' and Lehan's intelligence may be subject to mortal doubt. It is accusatory material, not really the material of proof. There exist no facts or independent and non-partisan witnesses to corroborate the claims. The informers are not accompanied by any evidence suggesting that they are known for veracity or trustworthiness. While it is true that the circumstances of the informers are not specifically known to the Defendant, it is highly unlikely

---

offense level. The Defendant was aware of this factor and accepted responsibility for it in his change of plea.
[3] For the record, the Defendant maintains that the relevant conduct evidence ought to be subject to the 'beyond a reasonable doubt' standard, in light of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004). He understands that the First Circuit Court of Appeals holds otherwise, and he knows that this Court will apply the lesser standard. Because the issue has not been clearly decided by the Supreme Court, however, Defendant's Counsel believes he is ethically bound to raise it. Significantly, the relevant conduct factors brought to light in the Re-Revised Presentence Report, if proved, seem to *require* a minimum mandatory sentence under 21 U.S.C. §841(b)(1)(A). By Counsel's

that they were simply conscientious citizens seeking to vindicate the truth of their assertions. It is far more probable that the informers were working with the DEA strictly out of self-interest alone and not in the pursuit of other, nobler, ends. Consider the position of the average informer. He or she is usually directly involved in the commerce of drugs and has been found out, or perhaps he or she labors under the weight of an indictment. Maybe the informer seeks to ameliorate an extant sentence or set of special parole conditions, maybe he or she is on the payroll of DEA in exchange for the inculpation of other persons. Whatever place in the scheme of things the informer may occupy, his or her sole agendum is self-involved, self-seeking, and most certainly not the assistance of others who, by virtue of their own indictments, are exceptionally vulnerable. And, because the subjects of an informer's accusatory words are under indictment, or have pled guilty to an indictment, they are extremely susceptible to rumor, innuendo and unsupported allegations simply because they are already 'down for the count.' They are convenient targets with no means of defense. In Counsel's experience, the truth of an informer's allegations – more often than not -- is generally irrelevant to him or her so long as the 'intelligence' produces the desired result, and so long as the informer does not fall into a perjury trap.

When an arrestee makes a statement concerning his or her criminal activity,

> ...a finding that a confession was 'voluntary for Fifth Amendment purposes...does not bear on the question of whether the confession was also free from any desire, motive, or impulse [the declarant] may have had either to mitigate the appearance of his own culpability by spreading the blame or to overstate [the defendant's] involvement' in the crimes at issue.

Lilly v. Virginia, 527 U.S. 116, 138, 119 S.Ct. 1887 (1999), quoting from Lee v. Illinois, 476 U.S. 530, 544, 106 S.Ct. 2056 (1986). That is, where the motive for a hearsay statement

---

reckoning, this sort of sentencing phenomenon has a remedy in the *spirit* of Blakely, if not in its specific language.

4

from a person already in jeopardy is naturally, on its face, suspicious, it is unlikely to carry the trustworthy indicia of reliability necessarily required for its evidentiary success.  Further, a Court may decline to credit witness statements where the witness "…may have had reason to depict the defendants in an unflattering light." United States v. Monteiro, 417 F.3d 208, 213 (1st Cir. 2005), citing to United States v. Phaneuf, 91 F.3d 255 (1st Cir. 1996). In this case, there is no 'downside' – for them -- to the statements made by the two informers; nor does it harm Lehan to have added weight to the present Defendant's already onerous burden. The statements can only help the informers and Lehan in their respective agendas.

But who will gainsay the informer? A Defendant cannot, without running the risk of waiving a strictly observed Fifth Amendment protection. The DEA will not – Special Agents are in the business of *collecting* the information, not manufacturing it. The AUSA cannot, because he or she was not party to the genesis of the information, and comes into possession of it after the fact. The Probation Department cannot, because its knowledge is limited to that which has been presented to the Probation Officer.

The currency of the informer should be regarded as counterfeit, absent strong, reliable, independent corroborative *fact* which could impute any *indicia* of truth to an informer's words. The statements themselves bear no intrinsic feature permitting their independent trustworthiness or credibility.

The allegations have, however, been made a part of the record for sentencing purposes. Whatever the Court's ultimate treatment of them, the Court will – if it does not strike the information – consider the material in light of the preponderance standard.

The 'witness' allegations themselves are of limited – or no -- *intrinsic* value. Yet should this Court accept them on face value, the Defendant's likely incarceration will dramatically

increase from that suggested in the Revised Presentence Report. His peril will escalate from a range of three years – plus or minus – to a range in the vicinity of ten years. Because of the sentencing severity inherent to the relevant conduct, and because the evidence of such conduct is frail, even though the quantities alleged are indeed large, the Defendant stresses the need for stern scrutiny of the relevant conduct allegations.

Proof by a 'preponderance of the evidence'

> ...means to prove that something is more likely than not so. In other words, a preponderance of the evidence means such evidence, as, when considered and compared with that opposed to it, has more convincing force, and produces the belief that what is sought to be proved is more likely true than not true... . The burden of proof has *not* been carried if, after considering all of the evidence, it is necessary to speculate, guess, or imagine that one or more of the necessary facts is true

United States v. Patriarca, 912 F.Supp. 596, 609-610 (D. Mass. 1995), emphasis added, ellipsis in original. The Patriarca Court went on to say that 'preponderance' does not mean simply that one side of a proposition has "the greater quantum." Rather, it means "...convincing [the mind of the Court] of the *truth* of the proposition asserted." *Id.*, quoting In re Winship, 397 U.S. 358, 367-368, 90 S.Ct. 1068 (1970), emphasis and parenthetical supplied.

"Traditional rules of evidence do not govern the sentencing phase; nonetheless, hearsay should provide sufficient indicia of reliability *before it is admitted*. U.S.S.G. § 6A1.3." United States v. Cash, 266 F.3d 42, 44 (1st Cir. 2001), emphasis supplied. Put another way, "...sentencing courts may consider hearsay, so long as the court is satisfied that it has other adequate indicia of reliability." United States v. Skodnek, 933 F.Supp. 1108, 1111 (D. Mass. 1996), citing to United States v. Valencia-Lucena, 988 F.2d 228, 232 (1st Cir. 1993). The Court in United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003) stated that a sentencing Court may

accept hearsay, "…so long as the court *supportably* concludes that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy[,]" citing to United States v. Zuleta-Alvarez, 922 F.2d 33, 36-37 (1st Cir. 1990), emphasis supplied.

The matter of United States v. Taveras, 380 F.3d 532 (1st Cir. 2004) involved a supervised release revocation proceeding, to which, as with sentencing hearings, the Rules of Evidence did not apply. The scrutiny given to hearsay is, however the same. At 380 F.3d 537, the Court noted that the hearsay statement the Government sought to use "was neither written nor sworn," citing to United States v. Comito, 177 F3d 1166, 1171 (9th Cir. 1999) – "Unsworn verbal allegations are, in general, the *least* reliable type of hearsay… ." [Emphasis supplied.] Such is the nature of the 'relevant conduct' statements in the instant case. The statements of the informers are unsworn and essentially uncorroborated. That the statements may bear similar allegations does not provide them with support in the sense that *independent* evidence from a known *and* reliable source would. Rather, the statements here rely upon self-serving 'corroboration,' which is really no corroboration at all. There exists no suggestion of Government surveillance of specific comings and goings involving the informers and the Defendant in the midst of the commerce of cocaine. There are no witnesses to any statements or conduct who can be said to be disinterested witnesses, witnesses who have nothing to gain or lose by reporting apparent criminal activity. What *does* exist here are unsubstantiated, unsupported, uncorroborated reports of drug activity made by people who can do so with impunity because they enjoy the protection of the Government against exposure. Such persons could report virtually *any* drug weights under the banner of relevant conduct and be safe, themselves, from personal scrutiny.

But their *statements* are not safe from scrutiny.

Although a defendant cannot claim the safeguards of the Rules of Evidence, he or she is entitled, under the Due Process Clause, *not* to be sentenced on materially incorrect information. United States v. Reid, 911 F.2d 1456, 1463-1464 (10th Cir. 1990), Certiorari denied, 498 U.S. 1097, 111 S.Ct. 990 (1991). Corroboration of hearsay statements may be "…a step toward, but no guarantee of, reliability. Sometimes the corroboration is illusory… ." United States v. Corbin, 998 F.2d 1377, 1385-1386 (7th Cir. 1993). A Court may decline to credit witness statements where the witness "…may have had reason to depict the defendants in an unflattering light." United States v. Monteiro. 417 F.3d 208, 213 (1st Cir. 2005), citing to United States v. Phaneuf, 91 f.3d 255 (1st Cir. 1996). In the present case – particularly in the matter of Lehan -- there are obvious reasons for imputing considerable drug quantities to the Defendant.

Finally, there is an issue of fundamental fairness at stake here. In a pre-Blakely, pre-Booker opinion, Judge Gertner remarked upon the inequities involved between trial (or plea) accountability and sentencing accountability, where the difference between the standards of proof applied is considerable. That is,

> …which allegations [are tested] by the standards required by the Bill of Rights, and which allegations [are tested by] the less searching review.
>
> Unmonitored, the process of determining loss for sentencing purposes by projecting probable loss from identified loss could lead to an inappropriate result: the sentencing 'tail' could easily end up wagging the trial 'dog.' Convicted beyond a reasonable doubt of an offense involving a small amount of loss to a victim, a defendant may be at risk of being sentenced for a substantially larger amount, and this based only on a reasonable estimate… .

United States v. Skodnek, 933 F.Supp. 1108, 1112 (D. Mass. 1996).

Therefore, for the reasons contained herein, for those adduced at hearing, and for any

others this Court may find in the interests of justice, the Court is asked not to consider the hearsay statements offered in support of 'relevant conduct,' or if such evidence is considered, that it be found wanting under the preponderance of the evidence standard.

                                        Respectfully Submitted,

                                        NICHOLAS POLICE, Defendant,
                                        By his Counsel:


                                        _____
                                        THOMAS F. McEVILLY
                                        McEvilly & Curley
                                        48 West Street, Suite 1
                                        Leominster, Massachusetts   01453-5694
                                        (978) 534-3556 [Telephone]
                                        (978) 534-5119 [Facsimile]

DATED: